Andrew C. CHRISTENBERRY

v.

RENTAL TOOLS, INC., Research Cottrell, Inc.

Civ. A. No. 85–5727.

United States District Court, E.D. Louisiana.

March 9, 1987.

Herbert W. Christenberry, Christenberry & D'Antoni, Marc D. Sarnoff, New Orleans, La., for plaintiff.

Roger C. Linde, Metairie, La., for defendants.

FINDINGS AND CONCLUSIONS

LIVAUDAIS, District Judge.

Plaintiff, Andrew C. Christenberry, brings this suit against his former employer, Rental Tools, Inc. (RTI), and its parent company, Research Cottrell, Inc., for alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

RTI is a Louisiana corporation with its principal place of business in Harvey, Louisiana, engaged in the business of renting predominantly oil field related equipment. Both RTI and Research Cottrell, Inc. are engaged in commerce as is contemplated in 29 U.S.C. § 202.

Plaintiff began employment with RTI in October of 1981 as a "yard hand" and continued in that position until February of 1982 when he was promoted to the position entitled "purchasing agent". As a yard hand, plaintiff received compensation at a time and one-half hourly wage for any hours worked in excess of 80 hours per two week period.

On or about February 1, 1982, plaintiff was placed in a position labeled "purchasing agent". As purchasing agent, his duties included taking inventory of RTI's goods, locating missing equipment in rental yards in other areas, placing items "in stock" and doing some purchasing for RTI.[1]

On or about April 1, 1982, plaintiff became "damage and inventory clerk/relief dispatcher." His duties as a damage and inventory clerk included physical inspection of equipment to determine any damage to the returned equipment. Nearly all such inspections and determinations were done with the aid of the Store Manager. As a dispatcher the plaintiff received phone orders from customers, typed delivery lists and told the yard hands to fill such orders. Plaintiff was also given a list, made by RTI, of three truck lines plaintiff was to call in order to get the filled orders delivered. As a dispatcher, plaintiff made no independent decisions of any substance, rather he did as he was instructed to do by his superiors at RTI. Plaintiff's duties remained the same or very similar until the end of his employment with RTI in February of 1984.

The plaintiff claims that RTI and its parent, Research Cottrell, Inc. violated 29 U.S.C. § 207, which provides in pertinent part:

(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. . . .

A workweek is defined in 29 C.F.R. 778.-105:

An employee's workweek is a fixed and regularly recurring period of 168 hours— seven consecutive 24–hour periods.

It is undisputed that while employed by RTI, the plaintiff earned in excess of $250.00 per week and therefore the standards to be used in determining whether the plaintiff is exempt from the FLSA are set forth in 29 C.F.R. § 541.214:

(a) Except as otherwise noted in paragraph (b) of this section, § 541.2 contains a special proviso including within the definition of "administrative" an employee who is compensated on a salary or fee basis at a rate of not less than $250.00 per week exclusive of board, lodging or other facilities, and whose primary duty consists of either the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers, or the performance of functions in the administration of a school system or educational extablishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on thereby, where the performance of such primary duty includes work requiring the exercise of discretion

---

**1.** As purchasing agent, plaintiff did not exercise discretion as to which vendors were to be contacted for purchasing purposes. Plaintiff had a list (created by his supervisor) from which he was to select the vendors. Further, all prices of equipment were set—there was no negotiations involved.

and independent judgment. Such a highly paid employee having such work as his or her primary duty is deemed to meet all the requirements in § 541.2(a) through (e). If an employee qualifies for exemption under this proviso, it is not necessary to test the employee's qualifications in detail under § 541.2(a) through (e).

29 C.F.R. § 541.205(c) clarifies the meaning of "directly related to the management policies or general business operations" by stating:

> The phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers....

> It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business....

> An employee performing routine clerical duties obviously is not performing work of substantial importance to the management or operation of the business even though he may exercise some measure of discretion and judgment as to the manner in which he performs his clerical tasks....

> An employee performing routine clerical inspector for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be "directly related to management policies or general business operations....

29 C.F.R. § 541.207 clarifies the meaning of "discretion and independent judgment" by stating:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term as used in the regulations of Subpart A of this part, moreover, implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance....

> Inspectors normally perform specialized work along specialized lines involving well-established techniques and procedures which may have been cataloged and described in manuals or other sources Such inspectors rely on techniques and skills acquired by special training or experience. They may have some leeway in the performance of their work but only within closely prescribed limits. Employees of this type may make recommendations on the basis of the information they develop in the course of their inspections (as for example, to accept or reject an insurance risk or a product manufactured to specifications), but these recommendations are based on the development of the facts as to whether there is conformity with the prescribed standards. In such cases a decision to depart from the prescribed standards or the permitted tolerance is typically made by the inspector's superior. The inspector is engaged in exercising skill rather than discretion and independent judgment within the meaning of the regulations in Subpart A of this part....

29 C.F.R. § 541.207(7)(d)(1) states:

> (d) Decisions in significant matters:

> (1) The second type of situation in which some difficulty with this phrase has been experienced relates to the level or importance of the matters with respect to which the employees may make decisions. In one sense almost every employee is required to use some discretion and independent judgment. Thus, it is frequently left to a truckdriver to decide which route to follow in going from one place to another; the shipping clerk is normally permitted to decide the method of packing and the mode of shipment of small orders; and the bookkeeper may usually decide whether he will post first to one ledger rather than another. Yet it is obvious that these decisions do not constitute the exercise of discretion and independent judgment of the level con-

templated by the regulations in Subpart A of this part.

 I also note that exemptions from the FLSA are to be narrowly construed. *Mitchell v. Kentucky Finance Co.,* 359 U.S. 290, 295, 79 S.Ct. 756, 759, 3 L.Ed.2d 815 (1959) citing *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945). Furthermore, an employer carries the bruden of proving the applicability of the exemption to the specific employee. *Idaho Sheet Metal v. Wirtz,* 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966) and an employee's job title alone is not determinative of his exempt or non exempt status. See 29 C.F.R. § 541.201(b).

Testimony at trial, as set forth hereinabove, showed that plaintiff's primary duties did not consist of the performance of office or non manual work directly related to management policies or general business operations of RTI. Furthermore, I find that the plaintiff did not exercise discretion and independent judgment as contemplated by 29 C.F.R. § 541.214. In his positions with RTI, plaintiff had immediate supervision, had little, if any, authority to deviate from procedure established by his superiors and neither made decisions of substantial importance nor performed work of substantial importance to the operation of RTI.

 For these reasons I find that the defendants have failed to carry their burden of proving that the plaintiff is exempt from the FLSA and further that the facts of this case show that the plaintiff's employment with RTI does not meet the standards set forth in 29 C.F.R. § 541.214. Accordingly, I find in favor of plaintiff, Herbert C. Christenberry.

### DAMAGES

29 U.S.C. § 216(b) provides:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages....

The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action....

At trial, the parties stipulated to the fact that if the court found in favor of the plaintiff, the amount owed by the defendants to the plaintiff for unpaid overtime wages would amount to $41,352.52.

 Plaintiff also claims entitlement to liquidated damages in the amount of $41,353.52. Whether or not such liquidated damages should be awarded lies within the sound discretion of the Court. *Foster v. Irwin,* 258 F.Supp. 709 (E.D.La.1966), *Bullock v. Pizza Hut, Inc.,* 429 F.Supp. 424 (M.D.La.1977). Such liquidated damages should not be awarded in cases such as the present, in which the employer acted in good faith in violating the Act. *Benson v. Universal Ambulance Service, Inc.,* 497 F.Supp. 383, 390 (E.D.Mich.S.D.1980) citing *Nitterright v. Claytor,* 454 F.Supp. 130 (D.D.C.1978); *Herman v. Roosevelt Federal Savings & Loan Association,* 432 F.Supp. 843 (E.D.Mo.1977), affirmed, 569 F.2d 1033 (8th Cir.1978); *White v. Beckman Dairy Co.,* 352 F.Supp. 1266 (W.D. Ark.1973). Therefore, I deny the plaintiff's claim for liquidated damages.

Finally, on the issue of attorney's fees, as above noted the Court *shall* allow a *reasonable* attorney's fee and costs of the action. The parties are directed to attempt to resolve this matter amicably and to report within twenty (20) days whether a stipulation as to attorney's fees and costs can be made.