Jeffrey COOKE, et al., Plaintiffs,

v.

GENERAL DYNAMICS CORPORATION,
Electric Boat Division, Defendant.

Robert DEVORE, et al., Plaintiffs,

v.

GENERAL DYNAMICS CORPORATION,
Electric Boat Division, Defendant.

Nos. 3:95CV0031(WWE),
3:95CV0170(WWE).

United States District Court,
D. Connecticut.

June 16, 1997.

Richard J. Pascal, Mark E. Block, O'Brien, Shafner, Stuart, Kelly & Morris, PC, Norwich, CT, for Plaintiffs.

Rodger W. Lehr, Jr., Douglas M. Peachey, General Dynamics/Electric Boat Div., Groton, CT, for Defendant.

### Supplemental Ruling on Defendant's Motion for Summary Judgment

EGINTON, Senior District Judge.

Pursuant to its order granting plaintiffs' motion for reconsideration, the court issues this supplemental ruling on defendant's motion for summary judgment (**Doc.# 89**).

■ At issue in these cases is whether plaintiffs are exempt from the overtime pay requirements of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq.*, which exempts workers "employed in a bona fide executive, administrative, or professional capacity," as those terms are defined by the regulations promulgated by the Secretary of Labor. 29 U.S.C. § 213(a)(1). In order to qualify for this exemption, an employee must meet both the "salary basis test" and the "duties test" set forth in the regulations. *Reich v. Waldbaum, Inc.,* 52 F.3d 35, 39 (2d Cir.1995); *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 613 (2d Cir.1991), *cert. denied,* 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992). The court previously granted partial summary judgment in favor of defendant on the salary basis test. The court, however, did not rule on the second prong of this exemption, which is whether plaintiffs meet the "duties test" set forth in 29 C.F.R. § 541.2(e).

The facts of these cases are set forth in the court's earlier ruling on the parties' cross-motions for summary judgment and will be repeated only to the extent necessary for this ruling.

### The "Duties Test"

■ The regulations contain separate definitions for executive, administrative, and professional employees.[1] The parties agree that to the extent the plaintiffs' duties fall into any one of these categories, it is the administrative category. The regulations set forth two tests for determining whether an employee is employed in a bona fide administrative capacity: the "long test" applicable to employees earning more than $155 per week but less than $250 per week, 29 C.F.R. § 541.2(a) –(e), and the "short test" applicable to employees earning more than $250 per week. 29 C.F.R. §§ 541.2(e)(2), 541.214. It is the latter "short test" that is applicable to the plaintiffs in these cases, all of whom earned more than $250 per week.

Under the "short test," an "administrative employee" is one whose (1) "primary duty"

---

1. The regulations promulgated by the Secretary of Labor pursuant to an express grant of authority from Congress under the FLSA have the force and effect of law. They are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute. *Freeman v. National Broadcasting Co.,* 80 F.3d 78, 82 (2d Cir.1996) (citations omitted); *Reich v. State of New York,* 3 F.3d 581, 587 (2d Cir.1993), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994). In contrast to the legislative regulations, the Secretary's interpretive regulations are not binding and do not have the force and effect of law. *Freeman v. National Broadcasting,* 80 F.3d at 83; *Reich v. New York,* 3 F.3d at 587. The weight they are to be accorded depends on their persuasiveness. *Reich v. New York,* 3 F.3d at 587–88. Generally, however, they are entitled to considerable weight because they constitute a body of experience and informed judgment to which courts may properly resort for guidance. *Reich v. New York,* 3 F.3d at 588; *Reich v. American International Adjustment Co.,* 902 F.Supp. 321, 324 (D.Conn.1994).

consists of "office or nonmanual work directly related to management policies or general business operations" of the employer and (2) whose primary duty includes work requiring "the exercise of discretion and independent judgment." 29 C.F.R. §§ 541.2(e)(2), 541.214(a). *See Reich v. State of New York,* 3 F.3d 581, 587 (2d Cir.1993), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994).

The "primary duty" rule is described at length in the interpretive regulations for executive employees, 29 C.F.R. § 541.103, which also apply to administrative employees. 29 C.F.R. § 541.206(b). Determining whether an employee's primary duty is administrative requires a detailed analysis of the time spent performing administrative duties. As a "rule of thumb," an administrative employee must spend at least 50% of his or her time on administrative duties. However, time alone is not the sole test. 29 C.F.R. §§ 541.103, 541.206(b). Under the short test, the employee's "primary duty" will usually be what he or she does that is of principal value to the employer, not the collateral tasks that he or she may also perform, even if they consume more than 50% of his or her time. *Dalheim v. KDFW–TV,* 918 F.2d 1220, 1227 (5th Cir.1990); *Spinden v. GS Roofing Products Co.,* 94 F.3d 421, 426–27 (8th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1254, 137 L.Ed.2d 334 (1997). Some of the pertinent factors to consider are the relative importance of the administrative duties he or she performs, as compared to the other collateral tasks; the frequency with which the employee exercises discretionary powers; his or her relative freedom from supervision; and the relationship between his or her salary and the wages paid to other employees for the kind of nonexempt work that he or she performs. *Spinden,* 94 F.3d at 427.

The interpretive regulations further explain the meaning of the phrase "directly related to management policies or general business operations" as describing those types of activities relating to the administrative operations of a business as distinguished from "production." This is often referred to as the "administrative/production dichoto-my." The regulations state that in addition to describing the types of activities, this phrase limits the exemption to persons "who perform work of substantial importance to the management or operation of the business" of the employer or the employer's customers. 29 C.F.R. § 541.205(a); *see Reich v. New York,* 3 F.3d at 587; *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 901 (3d Cir. 1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).

Subsection (b) elaborates on the administrative/production dichotomy. The administrative operations of the business include the work performed by "so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, and business research and control." 29 C.F.R. § 541.205(b). The regulations state that an employee performing such work is engaged in activities relating to the administrative operations of the business notwithstanding that he is employed, for example, as an administrative assistant to an executive in the production department of the business. *Id.; see Reich v. New York,* 3 F.3d at 588–89; *Martin v. Cooper Elec. Supply Co.,* 940 F.2d at 902.

The regulations in subsection (c) describe the second aspect of the "directly related to" test—that is, that only persons who perform "work of substantial importance to the management or operation of the business" will satisfy the first prong of the "short test." Subsection (c) describes "work of substantial importance" as including employees "whose work affects policy or whose responsibility it is to execute it or carry it out." 29 C.F.R. § 541.205(c). This phrase also includes a "wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." *Id.; see Martin v. Cooper Elec. Supply,* 940 F.2d at 902.

The regulations then provide a number of examples of types of employment that meet this test, including statisticians who analyze data and draw conclusions which are impor-

tant to the determination of policy, 29 C.F.R. § 541.205(c)(3);advisory specialists and consultants, safety directors, promotion men, 29 C.F.R. § 541.205(c)(5); and systems analysts and programmers who are concerned with planning, scheduling, and coordination of activities required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems, 29 C.F.R. § 541.205(c)(7). As the regulations note, there are no specific rules that will indicate the precise point at which work becomes of substantial importance to the management and operation of a business. 29 C.F.R. § 541.205(c)(1). *See generally* Annot., *Administrative Capacity under FLSA,* 124 A.L.R. Fed. 1 at § 2[a] (1995).

Once it is determined that an employee's primary duty is directly related to management policies or general business operations, the employer must also show that the employee's job included work requiring the exercise of discretion and independent judgment. 29 C.F.R. § 541.2(e)(2). Under the interpretive regulations, the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct in acting or making a decision after the various possibilities have been considered. It implies that the person has the authority to make an independent choice safe from immediate direction or supervision with respect to matters of significance. 29 C.F.R. § 541.207(a).

◼ Given these standards, any inquiry into exempt status is necessarily fact intensive. The exemptions from overtime pay requirements are to be narrowly construed, *Martin v. Malcolm Pirnie,* 949 F.2d at 614, and the employer bears the burden of demonstrating that an employee fits plainly and unmistakably within the exemption's terms. *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 206, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); *Reich v. New York,* 3 F.3d at 586–87; *Douglas v. Argo–Tech Corp.,* 113 F.3d 67 (6th Cir.1997); *Spinden v. GS Roofing Products Co.,* 94 F.3d at 426; *Spradling v. City of Tulsa,* 95 F.3d 1492, 1495 (10th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1081, 137 L.Ed.2d 216 (1997).

Because this issue comes before the court on a motion for summary judgment, all facts must be construed in favor of the plaintiffs, as the non-moving parties, and all reasonable inferences to be drawn from the facts must likewise be construed in the plaintiffs' favor. *Donahue v. Windsor Locks Board of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

### The "Duties" Test as Applied to the Plaintiffs

◼ There are thirteen plaintiffs in these two cases. In terms of job titles, plaintiffs are employed as material planning specialists, senior financial analysts, project financial analysts, and logistics specialists. An employee's job title, however, is not determinative of his or her exempt status. 29 C.F.R. § 541.201(b); *Stricker v. Eastern Off Road Equipment, Inc.,* 935 F.Supp. 650, 652 n. 1 (D.Md.1996); *Brock v. National Health Corp.,* 667 F.Supp. 557, 563 (M.D.Tenn.1987).

### The First Prong—Primary Duty/"Directly Related to Management Policies or Business Operations"

Plaintiffs do not dispute that their jobs consist of office or nonmanual work. They assert, however, that whether they are involved in ordering submarine parts or contract accounting or ship overhaul progress reporting, they are involved in production work, which takes them out of the administrative classification. They rely on what they describe as an admission by defendant in its amended answer that plaintiffs' employment "was directly related to the production" of submarines. Plaintiffs also dispute the degree of discretion and independent judgment that they exercise. In support of their position, plaintiffs have submitted limited and disjointed excerpts from each of their depositions in which they discuss their job duties and responsibilities and the degree of discretion they exercised.

Defendant admits that plaintiffs' descriptions of their job duties and responsibilities would normally create questions of fact that would defeat a motion for summary judgment, but argues that the job assignments and responsibilities set forth in the Salaried Personnel Accomplishments and Develop-

ment Reviews ("SPADRs") signed by each of the plaintiffs control this determination.

■ Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description. *Goldstein v. Dabanian,* 291 F.2d 208, 209 (3d Cir.), *cert. denied,* 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed.2d 191 (1961). Therefore, defendant's descriptions of plaintiffs' job assignments and responsibilities in their review forms are not controlling on the issue of whether they are administrative employees. The SPADRs may be evidence of plaintiffs' job duties, but they are not the sole source of evidence for this determination.

■ Furthermore, the fact that defendant has admitted that plaintiffs' duties related to the "production" of submarines does not dispose of this issue. Presumably the same could be said of almost every employee who worked for defendant. As defendant points out, the administrative/production dichotomy focuses not on whether an employee worked for an enterprise engaged in production activity, but whether the employee's primary duty was producing the product in question. *See Dalheim,* 918 F.2d at 1230; *Reich v. Haemonetics Corp.,* 907 F.Supp. 512, 517 (D.Mass.1995); *Goldstein v. Dabanian,* 291 F.2d at 209. Indeed, the regulations specifically cite the example of an administrative assistant to an executive in the *production* department of the business as being an administrative employee. 29 C.F.R. § 541.205(b). Therefore, the fact that plaintiffs' job duties and responsibilities related to the production of submarines is insignificant.

Additionally, a review of the numerous cases involving the exemption for administrative employees, cited in the annotation, *Administrative Capacity under the FLSA,* 124 A.L.R. Fed. 1 at §§ 16, 18—22, reveals that many cases have held that employees who work for a manufacturing or industrial firm in areas relating to production are exempt administrative employees.[2] Conversely, many other employees of employers engaged in production activities were held to be covered by the overtime requirements of the FLSA.[3]

The lines between production and administrative activity are anything but clear. Each case turns on a careful factual analysis of the full range of the employee's job duties and responsibilities, including any changes in those responsibilities during the period for which overtime compensation is sought. Indeed, the regulations provide that the determination of whether an employee's primary duty is administrative must be based on all the facts in a particular case. 29 C.F.R. § 541.206, incorporating by reference 29 C.F.R. § 541.103. A case that vividly illustrates the fact-specific nature of the determination that must be made is *Dolan v. Day & Zimmerman, Inc.,* 65 F.Supp. 923 (D.Mass. 1946), in which the court reviewed the findings of a special master, made after seventy

---

**2.** For example, the following employees were found to be exempt administrative employees: a group leader in charge of a particular of the torpedo manufactured by the employer, *Dolan v. Day & Zimmerman, Inc.,* 65 F.Supp. 923 (D.Mass.1946); a supervisor in an aircraft production plant, *Marian v. Lockheed Aircraft Corp.,* 65 F.Supp. 18 (N.D.Tex.1946); a quality manager in charge of the inspection department of a motor production plant, *Evans v. Continental Motors Corp.,* 105 F.Supp. 784 (E.D.Mich.1952); an assistant expediter in the procurement department of a torpedo manufacturing company, *Dolan, supra;* a production manager for a manufacturing facility, *Gentile v. Holly Corp.,* 185 F.Supp. 230 (D.Conn.1960); a spare parts department manager for a trucking company, *Goldberg v. Arkansas Best Freight System, Inc.,* 206 F.Supp. 828 (W.D.Ark.1962); a cost estimator employed by a radio corporation, *Wells v. Radio Corp. of America,* 77 F.Supp. 964 (S.D.N.Y.1948); a supervisor in charge of storage and distribution of materials in an ammunition plant, *Anderson v. Federal Cartridge Corp.,* 72 F.Supp. 639 (D.Minn. 1947).

**3.** The following cases found the employees *not* to be exempt administrative employees: the overseer of the drawing department of a manufacturing plant, *Schweri v. American Woolen Co.,* 78 F.Supp. 838 (W.D.Ky.1948); an expediter in a shipbuilding company, *Adams v. St. Johns River Shipbuilding Co.,* 69 F.Supp. 989 (S.D.Fla.), *rev'd on other grounds,* 164 F.2d 1012 (5th Cir.1947); a planning engineer for a torpedo factory, *Dolan, supra;* warehouse managers for automotive supply company, *Marshall v. Bolduc Auto Supply, Inc.,* No. 78–172, 1980 WL 2104 (D.Mass.1980); a purchasing agent for a rental company, *Christenberry v. Rental Tools, Inc.,* 655 F.Supp. 374 (E.D.La.1987), *aff'd,* 851 F.2d 1419 (5th Cir. 1988).

days of trial, concerning whether various classes of employees as well as numerous individual employees of a torpedo manufacturing enterprise fell within the administrative exemption. Thus, in the instant cases, the court must consider all of the evidence presented regarding the job duties and responsibilities of each plaintiff and must do so in a light most favorable to the plaintiffs.

Plaintiffs and defendant describe each plaintiff's job duties and responsibilities quite differently. Indeed, defendant accuses plaintiffs of minimizing or trivializing their job duties and responsibilities for purposes of this lawsuit, and plaintiffs accuse defendant of relying on self-serving statements in the SPADRs for the same purpose.

▇▇▇ For example, the defendant states that plaintiff Jeffrey Cooke, a Material Planning Specialist, falls within the "most obviously exempt group." According to defendant, the plaintiffs in this group have an average annual salary of $44,700; they have an average of over 21 years in the materials management group with defendant; three out of five have college degrees; they have significant prior experience; they manage significant material inventories consisting of thousands of parts worth millions of dollars; they make daily judgment decisions; they plan and organize their work and act on their own initiative; they are judged on how they meet broad generalized objectives, rather than on how they accomplish their goals; and through unlimited signature authority they have the ability and responsibility to make significant decisions regarding the purchase of materials without prior review by anyone else. (Defendant's Memorandum in Support of its Motion for Summary Judgment at pp. 25–26). Jeffrey Cooke's SPADR for 2/92 to 3/93 describes his job assignments as including responsibility for providing planning decisions and support for Trident/68 Class PSA, representing Materials Management (Planning) in the SEAWOLF major component

agendas and open shop computer programming for the department. It states that this function requires strong interface with Operations, Engineering, Planning, Purchasing to research and resolve problems, make buy/no buy decisions and assure the timely ordering status and substitution of materials.[4]

Mr. Cooke, in his deposition, however, paints a dramatically different picture of his job duties and responsibilities. In response to a question as to whether his job[5] had any supervisory components to it, and whether he was ever consulted by other employees or provided any guidance or direction, he responded:

> If that happened it happened once or twice but it was never—I never had anybody directly considering me a group leader or section leader or anything like that.

Deposition of Jeffrey Cooke taken on January 18, 1996, at 67. He was then asked about the percentage of his time spent on the phone interfacing, looking to solve problems, to which he responded:

> I think I spent 25 percent of the time on the telephone resolving problems or discussing problems that were relative. Maybe 20 percent of the time attending meetings to gather information or give information to people to solve problems. And the other—that leaves me maybe 55 percent split between computer programming and general computer help that was needed within the department.
>
> . . . .
>
> I wasn't a computer programmer as such. I still don't consider myself a computer programmer. . . .
>
> . . . .
>
> I'm usually submitting jobs, did not enter data. I didn't create programs. I manipulated stuff.

---

4. At least in Mr. Cooke's case, it is significant to note that his job objectives were not accomplished. Thus, it is unclear as to whether the job assignment portion of the SPADR describes what he actually did or his goals and objectives for the upcoming year.

5. As noted before, the plaintiff provided only a limited portion of his deposition testimony and it is not absolutely clear that this question referred to the position plaintiff held with defendant for which he is seeking overtime compensation.

. . . .

Deposition of Jeffrey Cooke at 150–152.

He was then asked about open shop programming for the department. He described his job duties as follows:

> Open shop is a system that allows you to go into the mainframe computers and extract information from existing data files. . . .

> I was the primary person [doing open shop computer programming]. I was backed up by a purchasing individual who did the same thing and two or three people who could do it if I was absent at the time. All of it was canned programs. They knew where the files were and get in with my ID and run the program.

Deposition of Jeffrey Cooke at 154–155.

The regulations indicate that systems analysts and computer programmers who are concerned with the planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems of the employer, are performing work directly related to management policies or general business operations. 29 C.F.R. § 541.205(c)(7). While defendant's description of Mr. Cooke's job would seem to place him within the administrative exemption, his own description raises factual questions as to whether his primary job duties would fall within the administrative exemption. Were they of substantial importance to management? Did they affect policy or business operations to a substantial degree? Was he developing systems for processing data for complex engineering problems of the employer, or was he performing rote data entry? Given the limited information before the court and defendant's heavy burden, the court cannot conclude that there are no genuine issues of material fact due to the factual discrepancies between Mr. Cooke's testimony and the information submitted by defendant.

■ Similar problems exist with respect to the remaining plaintiffs. The other Material Planning Specialists are Raymond Aronson, Robert Christina, Steven Christina, and George Ellery each of whom managed various parts of defendant's inventory and whose jobs are described by defendant in terms very similar to those of Jeffrey Cooke. These are the employees that defendant maintains are the most obviously exempt. Each of these plaintiffs' depositions, however, raises genuine issues of material fact as to whether their primary duties directly related to management policies or general business operations as those terms have been defined in the regulations.

Mr. Aronson, for example, describes his work as 90 percent "routine" processing of "systems prompts," which are computer prompts advising him as to what parts are on hand and what parts must be purchased and when. He states that he is not one of the engineers who originally identifies what parts are needed. Deposition of Raymond Aronson taken on Jan. 4, 1996, at 333, 340–41, 348. Mr. Steven Christina describes his work as a Material Planning Specialist as "rote. . . . You get information being fed from different areas telling you what to do and you just have to react to them, so you are doing the same thing over and over again based on this information that is fed to you. As far as managing parts, I don't think we can manage—I would call it more or less monitoring or reporting. . . ." Deposition of Steven Christina taken on Jan. 25, 1996, at 77. Based on these descriptions, the court finds that there are unresolved factual issues as to whether the Material Planning Specialists are administrative employees.

Plaintiffs Amanda Braboy, Scott Cockley, Robert DeVore, John Rathbone, Vladimir Rodgers, and Peter Smyth are Financial Analysts. The regulations provide that if an employee analyzes data and draws conclusions which are important to the determination of financial, merchandising, or other policy, he or she is doing work related to management policies or general business operations. 29 C.F.R. § 541.205(c)(3). Defendant's descriptions of these plaintiffs' positions would fall within this definition. For example, defendant describes Mr. DeVore's primary duty as providing all program control functions and financial analyses for major tasks under the Trident engineering overhaul contracts. Again, however, plain-

tiffs' sworn deposition testimony contradicts their SPADRs and defendant's descriptions of their jobs.

The plaintiffs describe their jobs in terms of simple data input and report preparation in previously established formats. *See, e.g.,* Deposition of Robert Devore taken on Mar. 15, 1996, at 43, 46, 56; Deposition of Scott Cockley taken on Mar. 12, 1996, at 72. Furthermore, Mr. Rathbone specifically denied ever having done any risk analysis or having developed any solutions, as indicated in his SPADR. He portrays his job as one determined by the contract and the customer and one in which he has no independent discretion or judgment. Deposition of John Rathbone taken on Feb. 29, 1996, at 99–100, 131. Mr. Rodgers describes his job as running data in various computer programs and generating reports that he gives to management, but he emphasized that he does not massage the data at all and that it is up to management to decide what to do based on the reports. Deposition of Vladimir Rodgers taken on Mar. 5, 1996, at 126. Thus, there are clearly genuine issues of material fact as to whether plaintiffs' primary duty consists of doing work directly related to management policies and general business operations.

Plaintiffs Kenneth Cote and Carl Jenkins are Logistics Specialists, who were responsible for managing certain tasks under the Trident submarine engineered overhaul program, which involved planning and scheduling of alterations and ensuring project material and personnel requirements were delivered on time and within budget, at least according to the defendant. Plaintiffs' version of their job duties and responsibilities again varies considerably from that portrayed by defendant. Mr. Cote, for example, adamantly denies that he was a manager. He states that he was not granted the authority to be a manager and was not allowed to make decisions, a function that was retained by his supervisor. Deposition of Kenneth Cote taken on Mar. 14, 1996, at 236–239. Mr. Jenkins similarly testified that he had no authority to make commitments on behalf of defendant and that he had to check with his supervisor

for everything. As the defendant's attorney deposing Mr. Jenkins stated, his description of his job made him sound "like a mail handler," to which Mr. Jenkins agreed. Deposition of Carl Jenkins taken on Mar. 7, 1996, at 72–74. Thus, again, on a motion for summary judgment, given the limited information available as to each of these plaintiffs, the court must find that there are genuine issues of material fact.

The ultimate question of whether an employee is excluded from the overtime requirements of the FLSA is a question of law. *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986). In these cases, however, plaintiffs have provided sworn testimony that raises genuine issues of material fact as to whether their primary duties consisted of administrative as opposed to production work. The court is unable to hold at this juncture that defendant has carried its burden of establishing that each plaintiff meets the first prong of the "duties" test so as to be classified an exempt administrative employee. Accordingly, defendant's motion for summary judgment will be denied.

### The Second Prong—The Exercise of Discretion and Independent Judgment

Defendant maintains that the second prong of the duties test should be the focus of the court's inquiry. It argues that the phrase, "to exercise discretion and independent judgment," involves the comparison and evaluation of various courses of conduct and acting after considering various alternatives. The regulations also imply that the person has the "authority or power to make an independent choice, free from immediate direction or supervision, and with respect to matters of significance." *O'Dell v. Alyeska Pipeline Serv. Co.,* 856 F.2d 1452, 1454 (9th Cir.1988), *citing* 29 C.F.R. § 541.207(a). Again relying on the SPADRs, defendant asserts that there should be no question that this second prong has been met.

While the standard the defendant has articulated is correct, the court cannot agree that there is no factual issue that this standard has been met with respect to each of the thirteen plaintiffs in these cases. As

evidenced by some of the deposition excerpts cited above, genuine issues of material fact have been raised by plaintiffs as to the degree of independent judgment and discretion they were allowed to exercise. Furthermore, plaintiffs maintain that the nature and extent of their "discretion and independent judgment" is a disputed fact in light of all of defendant's Standard Practices, Department Instructions, Variance Reports, contract requirements, and the like.

The regulations again require that the determination of whether an employee's primary duty includes work requiring the exercise of discretion and independent judgment is to be based on all the facts involved in the particular employment situation. 29 C.F.R. § 541.207(b). The discretion that is contemplated by this prong of the test is discretion that is "real and substantial, that is, ... exercised with respect to matters of consequence." 29 C.F.R. § 541.207(d)(1). As the regulations explain, the mere "use of skill in applying techniques, procedures, or specific standard," is not using independent discretion and judgment. 29 C.F.R. § 541.207(b). The regulations give the example of an inspector who must follow "well-established techniques and procedures which may have been cataloged and described in manuals or other sources," as not exercising independent judgment and discretion. 29 C.F.R. § 541.207(c)(2). Instead, the regulations indicate that the type of discretion and independent judgment that must be exercised refers to the kinds of decisions normally made by persons who formulate policy within their spheres of responsibility or who participate in this process or who exercise authority to commit the employer in a substantial respect, financial or otherwise. 29 C.F.R. § 541.207(d)(2).

Based on the evidence before the court as to each of the thirteen plaintiffs, the court finds that there are genuine issues of material fact as to whether each plaintiff's degree of independent judgment and discretion rises to the level required for application of the statutory administrative exemption. From the plaintiffs' descriptions of their primary job duties and responsibilities, the court cannot conclude that they exercised discretion and

independent judgment as those terms have been defined by the regulations. Accordingly, defendant's motion for summary judgment must be denied on this basis also.

### "Willfulness" under Section 255(a)

The second issue on which the court did not previously rule, which is raised by defendant's motion for summary judgment, is whether defendant is entitled to summary judgment on plaintiff's claim that defendant willfully violated the overtime compensation provision of the FLSA. A finding of a willful violation would invoke a three-year statute of limitations for which period back wages may be sought, as opposed to the two-year limitations period that normally applies. 29 U.S.C. § 255(a). A finding of willfulness may also entitle plaintiffs to an award of liquidated damages. 29 U.S.C. § 216(a).

It is now well-settled that to prove a willful violation of the FLSA within the meaning of section 255(a), it must be established that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *Reich v. Waldbaum, Inc.*, 52 F.3d at 39. Thus, if an employer acts unreasonably, but not recklessly, in determining its legal obligation, its actions will not be considered willful. *Reich v. Waldbaum, Inc.*, 52 F.3d at 39.

The court has already determined that the plaintiffs were paid on a salaried basis. While the court has found a genuine issue of material fact as to whether plaintiffs were administrative employees for purposes of the "duties test," the court has not determined that defendant is liable for overtime pay. Obviously, a finding of a *willful violation* must be predicated on a finding of a violation.

Additionally, from January, 1994, to October, 1994, the Department of Labor audited and investigated defendant's overall compliance with the FLSA and eventually found that approximately 1,350 of the 5,500 employees classified as salaried exempt did not pass the "duties" test. As a result, defendant agreed to pay approximately $7 million in

**66**

back overtime wages. It appears from the material before the court that the Department reviewed the classifications held by plaintiffs and did not find a violation. While this determination is not binding on the court, it does have relevance to the issue of the willfulness, if any, of any violation by defendant of the FLSA.

Therefore, at this juncture, the court must defer ruling on the issue of willfulness until factual determinations have been made as to whether defendant can carry its burden of proving that the plaintiffs are exempt from the overtime pay requirements.

### Conclusion

For the reasons set forth above, the court DENIES defendant's motion for summary judgment on the ground that defendant has not carried its burden of proving that here are no genuine issues of material fact as to whether plaintiffs are exempt administrative employees under the "duties" test. The court defers ruling on the issue of "willfulness."