Robert B. REICH, Secretary of Labor, United States Department of Labor, Plaintiff–Appellant,

v.

WALDBAUM, INC., Defendant–Appellee.

No. 383, Docket 94–6055.

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1994.

Decided April 12, 1995.

Ellen R. Edmond, U.S. Dept. of Labor, Washington, DC (Thomas S. Williamson, Jr., Sol. of Labor, Monica Gallagher, Associate Sol. of Labor, Paul L. Frieden, Acting Counsel for Appellate Litigation, Patricia M. Rodenhausen, Regional Sol., U.S. Dept. of Labor, of counsel), for plaintiff-appellant.

Lawrence A. Silverman, New York City (Dean R. Nicyper, William F. Dahill, Cahill Gordon & Reindel, New York, New York, Douglas P. Catalano, Neil G. Sparber, Catalano & Sparber, of counsel), for defendant-appellee.

Before: LUMBARD, FEINBERG and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Robert B. Reich, Secretary of Labor, United States Department of Labor (the "Secretary") appeals from a judgment entered December 29, 1993 in the United States District Court for the Southern District of New York, Charles H. Tenney, *Judge.* The district court enjoined defendant-appellee Waldbaum, Inc. ("Waldbaum") from future violations of sections 7 and 11(c) of the Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. §§ 207,[1] 211(c),[2] the overtime pay and record keeping provisions of the FLSA; and directed Waldbaum to pay $915,576.30 in overtime compensation to certain of its employees and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(c).[3] The district court determined, however, that Waldbaum's violations of § 207 were not willful, and accordingly that Waldbaum was liable only for two years, rather than three years, of compensatory and liquidated damages.[4] *See Reich v.*

1. The applicable provision is section 207(a)(1), which states:

    Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

2. Section 211(c) provides in pertinent part:

    Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

3. Section 216(c) provides in pertinent part: "The Secretary may bring an action in any court of competent jurisdiction to recover the amount of

unpaid ... overtime compensation and an equal amount as liquidated damages." However, the authorization for recovery of liquidated damages is qualified by 29 U.S.C. § 260, which provides in pertinent part:

    In any action ... to recover ... unpaid overtime compensation, or liquidated damages, under the [FLSA], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

4. This result follows from the applicable statute of limitations, 29 U.S.C. § 255(a), which provides in pertinent part:

    Any action commenced on or after May 14, 1947, to enforce any cause of action for ... unpaid overtime compensation, or liquidated damages, under the [FLSA] ...—
    (a) ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued....

*Waldbaum, Inc.*, 833 F.Supp. 1037 (S.D.N.Y. 1993) (opinion supporting judgment).

The Secretary appealed from the judgment of the district court, and Waldbaum cross-appealed. Waldbaum's cross-appeal was subsequently withdrawn, however, pursuant to a stipulation that settled all issues except the Secretary's contention that the district court erred on the issue of willfulness under § 255(a), *see supra* note 4, which accordingly is the only issue presented on this appeal.

Agreeing with the Secretary that the district court decided the issue of willfulness incorrectly, we reverse the judgment of the district court in part and remand for a redetermination of damages.

### Background

The facts of this case are extensively outlined in the opinion of the district court, familiarity with which is assumed. In 1987, the Secretary commenced an investigation of Waldbaum's compliance with the record keeping and overtime pay provisions of the FLSA at twenty stores in Bronx, Westchester, Putnam, and Rockland counties in New York State. Violations were found to have occurred with respect to 262 employees (the "Employees"). The investigation resulted in this lawsuit, in which the Secretary charged Waldbaum with violations of the overtime pay and record keeping provisions of the FLSA from "at least May 15, 1986" to June 2, 1989.

The Employees included forty-seven night clerks who stocked shelves, occasionally ran a cash register, and had no supervisory or managerial duties. The remaining 215 Employees were department heads who supervised their departments and the clerks employed there, night crew managers who supervised the night clerks, and assistant store managers who assisted the store managers and were responsible for the entire store in a manager's absence.

All of the Employees were subject to a collective bargaining agreement between Waldbaum and Local 338 of the Retail, Wholesale and Chain Store Food Employees Union, AFL–CIO (the "Agreement"). Article VI(a) of the Agreement provides that:

Any work in excess of 8 hours in any day, or 40 hours in any week, and any work on Sunday or on any day of rest or on any holiday as herein provided, is and shall be considered overtime work. Overtime work shall be compensated at the rate of one and one-half times the regular hourly wage. On the holidays provided hereunder, such overtime pay shall be in additional [sic] to the pay herein provided for such holidays. Sunday work shall be compensated at twice the regular hourly rate for all present regular full time and part time employees. Part time employees hired on or after January 1, 1987, shall receive one and one-half (1½) times their regular rate of pay for work performed on Sundays. All regular part time employees shall be given a reasonable opportunity to work on Sundays on a rotating basis.

Appendix A to the Agreement specifies the "minimum weekly wage for a 40 hour, 5 day work week" for various categories of employees, including assistant managers and department heads, and the "[m]inimum weekly wage for full time clerks," together with scheduled increases. Appendix A also contains a provision (the "Grandfather Clause") which states that:

Assistant managers and grocery, produce dairy-frozen food, appetizing-delicatessen department heads so employed prior to October 1, 1971 or January 2, 1972 (whichever is appropriate) shall each be guaranteed their overtime worked prior to October 1, 1971 or January 2, 1972 (whichever is appropriate) during the 5–day work week, but only up to 12 hours during such 5 day work week.

All of the Employees were required to punch a time clock, and received weekly compensation which varied according to the number of hours recorded. The "vast majority" of the Secretary's thirty-seven Employee witnesses testified, however, that they had worked hours, and particularly overtime hours, for which they had not been paid, *Reich*, 833 F.Supp. at 1041–42, and the district court credited that testimony. *Id.* at 1043. In addition, the district court found that Employees often worked after they punched out to accommodate management,

and sometimes did not punch out because it did not affect the amount they were paid. *Id.* at 1042–43. Consequently, the district court decided that Waldbaum had violated the overtime and record keeping requirements of the FLSA by not recording or properly paying all of the overtime hours worked by the Employees. *Id.* at 1041–45.

Waldbaum initially asserted an affirmative defense that the Employees were "bona fide executives" within the meaning of 29 U.S.C. § 213(a)(1)[5] and the Secretary's implementing regulations,[6] and accordingly were exempt from the overtime pay provisions of § 207. *See Reich,* 833 F.Supp. at 1046–47. Waldbaum subsequently withdrew this affirmative defense in light of this court's opinions in *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992), and *Whitmore v. Port Authority,* 907 F.2d 20

(2d Cir.1990). *See Reich,* 833 F.Supp. at 1047.

The district court decided that Waldbaum's contention that the Employees were exempt from the overtime and record keeping provisions as "bona fide executives" was unreasonable, and accordingly imposed liquidated damages pursuant to 29 U.S.C. § 216(c), *supra* note 3. *See Reich,* 833 F.Supp. at 1051. The district court also determined, however, that the law was sufficiently unclear prior to 1990 that Waldbaum's violations were not reckless and thus not willful, *see id.* at 1045–48, resulting in the recovery of compensatory and liquidated damages for two, rather than three, years in accordance with § 255(a), *supra* note 4.

As previously indicated, this appeal followed, presenting only the issue whether the district court correctly determined that Waldbaum's violations of § 207(a)(1), *supra*

---

**5.** Section 213(a)(1) provides in pertinent part:

(a) The provisions of ... section 207 of this title shall not apply with respect to—

(1) any employee employed in a *bona fide executive ... capacity* ... (as such term[ ] [is] defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of Title 5 [relating to administrative procedures], except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities)....

*Id.* (emphasis added).

**6.** 29 C.F.R. 541.1 provides in pertinent part:

The term *employee employed in a bona fide executive * * * capacity* in [29 U.S.C. § 213(a)(1)] shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of [sic] subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section ...; *and*

(f) *Who is compensated for his services on a salary basis* ...

*Id.* (emphasis partially added).

29 C.F.R. § 541.118(a) provides in pertinent part:

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

(1) An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

note 1, were not "willful" within the meaning of § 255(a), *supra* note 4.

### Discussion

#### A. *The Standards of Liability and Review.*

It is now settled that to prove a willful violation of the FLSA within the meaning of § 255(a), it must be established "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988); *see also Frasier v. General Elec. Co.*, 930 F.2d 1004, 1008 (2d Cir.1991). It follows that "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, ... its action ... should not be ... considered [willful]." *McLaughlin*, 486 U.S. at 135 n. 13, 108 S.Ct. at 1682 n. 13.

Waldbaum made four arguments to the district court concerning why its conduct was not willful. Each was rejected except Waldbaum's contention that it believed in good faith that all of the Employees were "bona fide executives" within the meaning of 29 U.S.C. § 213(a)(1) and the regulations promulgated thereunder, *see supra* notes 5 and 6, and only this argument is presented for our consideration on appeal. The district court found that Waldbaum's belief was unreasonable but not reckless under case authority existing at the time of the violations. *See Reich*, 833 F.Supp. at 1046–48.

Invoking *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1292 (3d Cir.1991), the Secretary contends that "[w]hether [Waldbaum's] knowledge or intent constitutes willfulness is a question of law subject to plenary review." Waldbaum responds by citing a number of cases, including our decisions in *Benjamin v. United Merchants & Manufacturers, Inc.*, 873 F.2d 41, 44 (2d Cir.1989), and *Russo v. Trifari, Krussman & Fishel, Inc.*, 837 F.2d 40, 43 (2d Cir.1988), for a "clearly erroneous" standard of review. *See* Fed.R.Civ.P. 52(a). The difference in this case is more apparent than real, because the underlying facts are not in serious dispute, and the question presented is essentially the evaluation to be made of those facts. *Cf. Reich v. New York*, 3 F.3d 581, 587 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994); *Malcolm Pirnie*, 949 F.2d at 614. In any event, assuming that the more stringent "clearly erroneous" standard applies, we deem it satisfied because we are "left with the 'definite and firm conviction that a mistake has been committed' " in the district court's resolution of the willfulness issue. *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

#### B. *The "Bona Fide Executive" Exemption.*

The regulations pertinent to the resolution of this issue, which were last amended in 1975, specify a "duties" and a "salary" test, both of which must be satisfied to qualify for the "bona fide executive" exemption provided by 29 U.S.C. § 213(a)(1), *supra* note 5. *See* 29 C.F.R. §§ 541.1, 541.118, *supra* note 6. The district court found that the Employees "likely met" the "duties" standards spelled out in § 541.1(a)-(e). *Reich*, 833 F.Supp. at 1048. We perceive no clear error in this determination as to the Employees other than the night clerks. The district court made no separate assessment of the duties performed by the night clerks, however, and Waldbaum's oral argument of this issue on appeal contended only that the pertinent record evidence was sparse, as distinguished from favoring Waldbaum's position on the issue.

In any event, it is clear that a separate and additional determination must be made that an employee "is compensated for his services on a salary basis," § 541.1(f), in order for the "bona fide executive" exemption to be available. The district court noted that, in contending that it had not willfully violated the FLSA in withholding overtime pay from the Employees, Waldbaum "point[ed] only" to the Grandfather Clause of the Agreement as "blurr[ing]" the distinction between salaried and hourly employees. *Reich*, 833 F.Supp. at 1047. The court added that this consideration was not affected by *Whitmore* and *Malcolm Pirnie*. 833 F.Supp. at 1048. The court explained that "those cases ma[d]e

clear that the subject employees could not be considered salaried because they were docked for hours they did not work. [The Grandfather Clause] only created a guaranteed minimum, not a guaranteed wage independent of hours worked." *Id.*

The district court then resolved this issue as follows:

Nevertheless, the court concludes on the evidence before it that Waldbaum's argument prior to 1990 was at least colorable. The duties test was likely met, and there was confusion as to whether deductions for hours not worked would render an employee salaried or hourly. Still, this argument must be characterized as unreasonable. Waldbaum required significantly more evidence regarding the basis of its belief that the subject employees met the salaried test. Exemptions from the FLSA are construed narrowly against the employer. Without more, Waldbaum had little hope of success. Still, Waldbaum's argument was not so baseless as to evidence reckless disregard of the law. Accordingly, the court concludes that Waldbaum has shown that it did not act willfully in violating the FLSA, and thus the applicable statute of limitations for this action is two years.

*Id.* (citations omitted).

We agree with the district court's assessment that *Whitmore* and *Malcolm Pirnie* do not lend discernible support to Waldbaum's position, but disagree with its overall conclusion that Waldbaum's view, while unreasonable, did not amount to reckless disregard of the applicable law.

*Whitmore* ruled, in a case involving police officers employed by the Port Authority of New York and New Jersey, that "if an employee can be docked for fractions of a workday missed, then that employee is an hourly, not a salaried, employee." 907 F.2d at 21. *Malcolm Pirnie* reiterated this ruling, 949 F.2d at 615, with respect to "highly compensated employees, who are normally characterized as professionals," *id.* at 613, of a "corporation that specialize[d] in providing

environmental engineering, architectural, scientific and planning services to various industrial clients." *Id.* We note that there is a significant split in the case law concerning whether the existence of a policy to dock employees' pay for fractions of a workday missed suffices to preclude "salaried" status, or only the actual implementation of such a policy will generate this result. *See Yourman v. Dinkins,* 865 F.Supp. 154, 160–62 (S.D.N.Y.1994) (outlining relevant case law). Only in their impact upon this question might *Whitmore* and *Malcolm Pirnie* be considered novel developments in the law. *See infra* note 7.

In any event, we do not perceive the relevance of this authority to the issue presented on this appeal. The *Whitmore/Malcolm Pirnie* issue is whether an employee who would *otherwise* be deemed to be "compensated for his services on a salary basis," § 541.1(f), will lose that status if subject to losing pay for fractions of a workday missed. In this case, however, the Employees are compensated on an hourly basis for both regular time and overtime, and punch a time clock to provide the data from which to compute their pay. We decided in 1983 that: "Pharmacists paid an hourly rate and not a salary are not 'professional employees' exempt from FLSA under 29 CFR § 541.3(e)." *Donovan v. Carls Drug Co.,* 703 F.2d 650, 652 (2d Cir. 1983) (collecting cases);[7] *see also Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1061 (2d Cir.1988) ("Here, the nurses do not come within the definition of bona fide professional employees in section 541.3 because they are paid on an hourly basis and not by fee or salary.") (citing *Donovan,* 703 F.2d at 652). Section 541.3(e) contains virtually identical language ("compensated for services on a salary or fee basis") to § 541.1(f) ("compensated for his services on a salary basis"), the provision at issue in this case. Indeed, 29 CFR § 541.312 defines the salary basis of payment for bona fide professional employees by a cross reference to § 541.118, *supra*

---

7. *Donovan* went on to specify that "[a] salaried professional employee may not be docked pay for fractions of a day of work missed[,]" 703 F.2d at 652, thus anticipating the rulings in *Whitmore*

and *Malcolm Pirnie. Cf. Reich v. Malcolm Pirnie, Inc.,* 821 F.Supp. 905, 909 (S.D.N.Y.1993) ("The Second Circuit did not consider its holding on salary basis [in *Malcolm Pirnie*] novel....").

note 6, which defines the term for bona fide executive employees.

Thus, the law was clear at all relevant times that employees compensated on an hourly basis are subject to the FLSA, and that the "bona fide executive" exemption is inapplicable to such employees. Waldbaum's arguments to the contrary are not persuasive. As to the Grandfather Clause, we agree with the district court that this provision "only created a guaranteed minimum, not a guaranteed wage independent of hours worked." 833 F.Supp. at 1048. Even if, as Waldbaum contends, prior investigations by the Secretary regarding Waldbaum's compliance with the FLSA did not focus upon the duties performed by the Employees, they sufficed to acquaint Waldbaum with the general requirements and policy of the statute, and no more is required to resolve the clear issue whether hourly employees are subject to the FLSA. Further, no significant weight need be given to the testimony of Robert Hirsch, a former Waldbaum executive who testified that Waldbaum knowingly risked violating the FLSA in order to save money, to reach the conclusion that Waldbaum acted in reckless disregard of its obligations under the FLSA.

We note, finally, that some of the other arguments that Waldbaum presented to the district court on the willfulness issue do not mesh smoothly with the contention pressed on this appeal. Waldbaum claimed that it granted compensatory time in lieu of overtime payments in substantial compliance with the FLSA, and that it was unaware of any uncompensated hours worked by the Employees because of its good faith reliance upon its record keeping procedures and the data generated by the Employees' punching of the time clock. *See Reich,* 833 F.Supp. at 1045–46. It is difficult to reconcile these descriptions of Waldbaum's conduct in 1986–1989, the time frame at issue in this case, with a claim that only in 1990 and 1991, after we decided *Whitmore* and *Malcolm Pirnie,* did Waldbaum become aware that the Employees were not exempt from the FLSA.

### Conclusion

We reverse the judgment of the district court, solely with respect to the issue of willfulness presented on this appeal, and remand for a redetermination of compensatory and liquidated damages in accordance with this opinion.