**Corinne A. COX, Plaintiff,**

v.

**QUICK & REILLY, INC.; and Fleet Boston Financial Corporation, Defendants.**

**No. 1:03 CV 1036.**

United States District Court, N.D. New York.

Oct. 6, 2005.

Walter Thayer & Mishler, PC, (Mark S. Mishler, Esq., of Counsel), Albany, NY, for Plaintiff.

Edwards, Angell Law Firm—RI Office, (George P. Kostakos, Esq., Gina DeSantis Wodarski, Esq., of Counsel), Providence, RI, for Defendants.

### *MEMORANDUM–DECISION and ORDER*

HURD, District Judge.

## I. *INTRODUCTION*

Plaintiff Corrine Cox ("Cox") brings suit against her former employers, defendants Quick & Reilly, Inc. ("Q & R"), a broker-

age and investment firm, and FleetBoston Financial Corporation ("Fleet"), its parent company. She asserts four causes of action against the defendants: (1) Violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); (2) Discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; (3) Discrimination on the basis of sex, in violation of the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296(1)(a); and (4) Unlawful retaliation, in violation of the NYSHRL, New York Executive Law § 296(7).

Pursuant to Fed.R.Civ.P. 56, the defendants, Q & R and Fleet, move for summary judgment on all claims against them. Plaintiff opposes. Oral argument was heard on July 8, 2005, in Utica, New York. Decision was reserved.

## II. *FACTS*

Cox was employed in various capacities by Q & R or their predecessors for approximately 19 years, until her resignation on June 14, 2002. (Docket No. 1, Compl. ¶ 4) ("Compl.¶ ____"). From 1992–95, she served as an Assistant Branch Manager of Fleet's downtown Albany branch office, and from 1995–2000, served as the Branch Manager of that office. *Id.* at ¶ 5; *see also* Docket No. 21, Pl.'s Resp. to Defs.' Rule 7.1(a)(3) Statement ¶ 1 ("Pl.'s Resp. to Defs.' Rule 7.1(a)(3) Statement ¶ ____").

In 1998, Fleet acquired Q & R, though Q & R remained in existence after the merger. (Docket No. 18, Defs.' Statement of Material Facts in Support of their Mot. for Summ. J. ¶ 2) ("DSMF ¶ ____"). At that time, Cox was the Branch Manager of Fleet's downtown Albany office. (Compl.¶ 5). Plaintiff contends, though defendants dispute, that she continued as the Branch Manager of the downtown Albany branch. (*See* Pl.'s Resp. to Defs.' Rule 7.1(a)(3) Statement ¶ 7; DSMF ¶ 7).[1] When the companies merged, Q & R also had an Albany office, located on Wolf Road, managed by Jeffrey Sheehan ("Sheehan"). (DSMF ¶¶ 4–6). Sheehan founded the Wolf Road branch of Q & R in 1980, and served as the Branch Manager since its inception. *Id.* at ¶ 17. After the merger, Q & R viewed the Wolf Road branch managed by Sheehan as the primary Albany office, and the downtown Albany branch as the "satellite" office. *Id.*

---

**1.** In their Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, defendants moved to strike Plaintiff's Response to Defendants' Statement of Material Facts, Statement of Material Facts in Dispute, Plaintiff's Memorandum of Law in Opposition to Summary Judgment, and Affidavit of Corrine A. Cox in Opposition to Summary Judgment, because the aforementioned documents relied on Cox's Affidavit, which defendants maintain is inadmissible. (Docket No. 23, Defs.' Reply to Pl.'s Opp. to Defs.' Mot. for Summ. J at 4).

The Federal Rules of Civil procedure provide that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

However, affidavits—especially those in opposition of summary judgment motions—often contain statements that are argumentative, legal conclusions, based on information and belief, or opinions. As such, "a court may strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Gwynn v. Clubine*, 302 F.Supp.2d 151, 159 (W.D.N.Y. 2004) (citing *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir.1995)). In this case, it is not necessary to strike the entire affidavit.

For purposes of this decision, the Cox Affidavit and Plaintiff's papers that rely upon it will be considered only for the facts that were based upon Cox's personal knowledge, such as her employment experience, job title, and wages.

at ¶ 6. Plaintiff maintains, though defendants dispute, that she did not report directly to Sheehan at this time. (Pl.'s Resp. to Defs.' Rule 7.1(a)(3) Statement ¶ 7; DSMF ¶ 7).

In the fall of 2000, Fleet/Q & R underwent a corporate reorganization and changed its business model (DSMF ¶ 8); as a result, Q & R made Paul Sciortino ("Sciortino") the Branch Manager of the downtown Albany office and demoted Cox to the position of Operations Manager, reporting to Sciortino. (Compl.¶¶ 10, 9). Plaintiff was not given the opportunity to apply or compete for this the Branch Manager position. (Pl.'s Resp. to Defs.' Rule 7.1(a)(3) Statement ¶ 9). Additionally, Q & R changed its compensation structure, resulting in a dramatic decrease of her salary. Before the compensation change, she received about $40,000 in base salary, and $120,000 in bonuses. *Id.* at ¶ 12; *see also* DSMF ¶ 12. After the change, as Operations Manager, she received $60,000 base and $30,000 in bonuses. (DSMF ¶ 14). Sheehan remained the Branch Manager of the Wolf Road offices, but was considered a "Non–Producing Branch Manager," earning a base salary of $75,000 and a guaranteed bonus of $50,000. *Id.* at ¶ 18.

Q & R decided to merge the downtown Albany branch into the Wolf Road branch in February 2001. *Id.* at ¶ 19. The merger was not complete until July 2001; at that time, the downtown Albany branch officially closed, and Cox moved to the Wolf Road branch. *Id.* As part of the consolidation, Q & R placed Sciortino in the position of Branch Manager, and made both Cox and Sheehan Operations Managers; both reported directly to Sciortino. *Id.* at ¶ 20. Although Sheehan was demoted from a Branch Manager to an Operations Manager, he was still paid his Branch Manager salary of $75,000 base with a $50,000 guaranteed bonus. *Id.* at ¶ 21.

Plaintiff, also an Operations Manager, continued to receive $60,000 in base salary, with a $30,000 guaranteed bonus. *Id.*

At some time in 2001, Q & R determined that it did not need two Operations Managers in the Wolf Road office, so it decided to eliminate one of the positions. *Id.* at ¶ 24. Cox claims, though defendants deny, that she was informed that her position was targeted for elimination. (Compl. ¶ 29; DSMF ¶ 27). However, in early 2002, Sheehan's position was eliminated, effective April 2002. (DSMF ¶ 26). Sheehan was allegedly " 'asked to leave' as a result of the [Wolf Road branch] having failed an audit conducted in December 2001 for a period during which Jeffrey Sheehan had responsibility." (Pl.'s Resp. to Defs.' Rule 7.1(a)(3) Statement ¶ 26). The audit rated the branch as "unsatisfactory" and an "unacceptable risk to the firm and its affiliates." (Docket No. 20, Cox Aff., Pl.Ex. I at 2) ("Cox Aff. ____").

Q & R offered Cox the position of Operations Manager at the Wolf Road branch. (DSMF ¶ 26). She was told, but defendants dispute, that she would receive the same salary and benefits that Sheehan had received as the Operations Manager of the Wolf Road branch. (Compl. ¶ 33; DSMF ¶ 26). Plaintiff accepted the offer, but Q & R refused to pay her the higher salary; she remained at the $60,000 base and $30,000 guaranteed bonus schedule. (Compl. ¶ 35; *see also* Pl.'s Resp. to Defs.' Rule 7.1(a)(3) Statement ¶ 26).

Cox filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on or about April 29, 2002, alleging that the defendants paid her less than a male counterpart in violation of the EPA, Title VII, and the NYSHRL. (Compl. ¶ 37; DSMF ¶ 30). Sciortino was notified of the EEOC complaint on or about May 13, 2002, and he immediately called plaintiff at her home.

(Compl.¶ 40). Sciortino complained to Cox first, because she had not come to him first about her grievances; and second, because she had not given him "a heads up" that she had filed a complaint with the EEOC. (DSMF ¶ 31). Immediately after plaintiff filed the complaint, she was "shunned" by her co-workers at Q & R, and was "effectively treated as an outcast." (Compl.¶ 44). She was also informed that Sciortino had allegedly commented, "why would she [file the EEOC complaint], doesn't she realize her career with Fleet is over," and said that she had "shot herself in the foot." (Compl.¶¶ 41–42).

Cox resigned from defendants Q & R and Fleet on June 14, 2002. (Compl.¶ 48). The EEOC issued a "right to sue" letter in regard to her April 29, 2002, complaint, and this litigation was timely commenced.

### III. DISCUSSION

#### A. Jurisdiction

Jurisdiction over this matter is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 206(d), and 42 U.S.C. § 2000e. Supplemental jurisdiction is pursuant to 28 U.S.C. § 1367 regarding plaintiff's claims under New York Executive Law § 296.

#### B. Summary Judgment Standard

When considering a motion for summary judgment, the Court views the evidence presented in the light most favorable to the non-moving party and draws all real inferences in her favor. *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir.2002). It is well settled that the Court may grant summary judgment only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson*

*v. New York State Dep't of Corr. Service*, 180 F.3d 426, 436 (2d Cir.1999). An issue is "genuine" if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby*, 477 U.S. at 248–49, 106 S.Ct. 2505.

A party seeking summary judgment bears the initial burden of demonstrating to the Court the absence of a genuine issue of material fact, as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the party opposing the motion for summary judgment must produce specific evidence establishing the existence of a genuine factual dispute that a reasonable jury could find in its favor. Fed.R.Civ.P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; it cannot rest upon "mere allegations or denials" asserted in its pleadings, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994).

To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could resolve the issue in favor of the nonmovant. *Liberty Lobby*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

#### C. EPA Claim (Second Cause of Action)

Cox claims that the defendants violated the EPA by paying her less than they paid a male employee, Sheehan, when both employees were performing equal work requiring equal skill, effort, and responsibility under similar working conditions from

the time of the Fall 2000 reorganization of the Q & R offices to the time plaintiff resigned from Q & R on June 14, 2002. Defendants move for summary judgment on two grounds: First, defendants argue that plaintiff's allegations of a gender-based wage disparity prior to August 20, 2001, are time-barred by the EPA's two-year statute of limitations. Second, defendants argue that during the time period of August 20, 2001, through June 14, 2002, they had legitimate reasons, based on factors other than sex, for compensating plaintiff less than they had compensated Sheehan.

■ The EPA "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for 'equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999) (quoting 29 U.S.C. § 206(d)(1)). To establish an equal pay claim under the EPA, the plaintiff must first make out a prima facie case of discrimination by showing: "(i) the employer pays different wages to employees of the opposite sex; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility;[2] and (iii) the jobs are performed under similar working conditions." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir.1995); *see also Belfi*, 191 F.3d at 135.

■ Should the plaintiff successfully establish a prima facie case, the burden of persuasion shifts to the defendant employers to prove that the wage disparity is justified and results from "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."[3] 29 U.S.C. § 206(d)(1); *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 524 (2d Cir.1992). The statutory exemptions are to be "narrowly construed." *Ryduchowski v. Port Auth.*, 203 F.3d 135, 143 (2d Cir.2000) (quoting *EEOC v. Aetna Ins. Co.*, 616 F.2d 719, 724 (4th Cir.1980)). Thus, "[t]he burden of establishing one of the four affirmative defenses ... 'a heavy one.'" *Id.* (quoting *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 843 (6th Cir.1997)).

■ The plaintiff may counter any such assertions of justification by the defendant by offering evidence that the reasons advanced by the defendant are simply a pretext for sex discrimination. *Aldrich*, 963 F.2d at 526; *see also Belfi*, 191 F.3d at 136. "'The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has use[d] the factor reasonably in light of the employer's stated purpose as well as its other practices.'" *Aldrich*, 963 F.2d at 526 (quoting *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir.1986)).

---

**2.** When proving the second element of discrimination under the EPA, it is insufficient for the plaintiff to illustrate that the two positions in question are "merely comparable." *Tomka*, 66 F.3d at 1310. While "[a] plaintiff need not demonstrate that her job is identical to a higher paying position," *Lavin–McEleney v. Marist College*, 239 F.3d 476, 480 (2d Cir. 2001), she must meet a high standard and show that the two positions are "substantially equal" in terms of skill, effort, and responsi-

bility, *Tomka*, 66 F.3d at 1310; *see also Heap v. County of Schenectady*, 214 F.Supp.2d 263, 271 (N.D.N.Y.2002).

**3.** "[T]he 'factor other than sex' defense does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." *Belfi*, 191 F.3d at 136 (quoting *EEOC v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir.1988)).

■ Cox has established a prima facie case on her equal pay claims. From August 2001 to April 2002, after the downtown Albany branch was consolidated into the Wolf Road branch, plaintiff and Sheehan were both working in the same titled position as Operations Managers. However, while plaintiff was earning a $60,000 base salary, with $30,000 in guaranteed bonuses, Sheehan, a male, was earning $75,000 base, with $50,000 in guaranteed bonuses. The defendants do not dispute that (1) Q & R paid different wages to Cox and Sheehan, (2) when they were both working as Operations Managers, (3) at the Wolf Road branch of Q & R. As such, plaintiff has established a prima facie case of discrimination in violation of the EPA.

### 1. *Statute of Limitations*

■ An action alleging a violation of the EPA must be filed within two years of the date when the cause of action accrued, or in cases where the employer is alleged to have engaged in a "willful" violation, within three years of accrual. 29 U.S.C. § 255(a) (1998). An employer's violation of the EPA is " 'willful' or reckless within the meaning of § 255(a) if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.' " *Pollis v. New Sch. for Soc. Research,* 132 F.3d 115, 119 (2d Cir.1997) (quoting *Reich v. Waldbaum, Inc.,* 52 F.3d 35, 39 (2d Cir.1995)).[4] Under the EPA, the plaintiff is not required to show that the employer's discrimination

was intentional, or was done in bad faith. *Id.* (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126 n. 19, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).

■ "A claim of discriminatory pay ... involves a series of discrete, individual wrongs." *Id.* Each act that is part of the discriminatory violation that injures the plaintiff is a separate cause of action that starts the statutory period over again. *Id.; see also Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 134 (2d Cir.2003) (citing *Bazemore v. Friday,* 478 U.S. 385, 395, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)). An employee may be awarded back pay for violations of the EPA, but only for the damages sustained within the limitations period. *Pollis,* 132 F.3d at 118–19.[5]

Defendants assert that all of plaintiff's EPA allegations prior to August 20, 2001, are time-barred, and as such, they are entitled to summary judgment on this issue. Defendants, however, have incorrectly construed the statute of limitations governing the EPA. Plaintiff's claim is timely, and defendants' motion for summary judgment on the grounds that the claim is time-barred will be denied.

■ There is no doubt that Cox's complaint was filed within the statute of limitations governing EPA claims. Each paycheck that compensated her less than Sheehan for doing the same work as Operations Managers constituted a separate cause of action under the EPA; each pay-

---

4. In *Pollis,* the plaintiff complained multiple times to her employer about salary discrepancies between herself and her male counterparts, yet her employers continued to pay her less than comparable males at in her position. 132 F.3d at 120. The Second Circuit found that the employer's actions—knowing that the plaintiff was paid less than male counterparts, yet doing nothing to rectify the situation—was "sufficient to support the jury's finding of reckless or willful violation" of the EPA. *Id.*

5. *Cf. Gandy v. Sullivan County,* 24 F.3d 861, 865 (6th Cir.1994) (holding that a plaintiff complaining of a willful violation of the EPA over a ten-year employment period is not barred from filing suit, but "should not be allowed to collect for damages outside the three-year limitations period").

check started a new statute of limitations for that claim. Plaintiff resigned from Q & R on June 14, 2002—she therefore had two years from the date of the issuance of her final Q & R paycheck to file an EPA claim for the alleged discriminatory action. Because plaintiff filed her complaint on August 20, 2003, she is well within her statutory limitations period, and defendants' motion for summary judgment as to the timeliness of plaintiff's EPA claim must be denied.

■ Additionally, plaintiff will be given the opportunity to present evidence to the jury that defendants' violation of the EPA was willful. The question of "willfulness," as it bears on the application of a statute of limitations, is a question of fact for the jury. *See Zacholl v. Fear & Fear, Inc.*, No. 5:01–CV–1953FJSDEP, 2004 WL 725964, at *3 (N.D.N.Y. April 5, 2004); *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 163 (4th Cir.1992); *Melendez–Arroyo v. Cutler–Hammer de P.R. Co.*, 273 F.3d 30, 38 (1st Cir.2001). Thus, should plaintiff be awarded damages in the form of back pay, the jury shall determine whether the applicable limitations period is two or three years.

### 2. *Affirmative Defenses*

■ Defendants also contend that they are entitled to summary judgment on this EPA claim because they have lawful, gender-neutral affirmative defenses for compensating Sheehan at a higher rate than plaintiff. Defendants allege that Sheehan's increased experience and seniority in

comparison with plaintiff, coupled with defendants' desire to not penalize Sheehan by lowering his pay after the branch consolidation, are gender-neutral reasons that rebut plaintiff's prima facie case of discrimination under the EPA. Plaintiff challenges defendants' proffered justifications for the wage disparities, claiming that the above explanations are pretexts for sexual discrimination. Because there are genuine issues of material fact as to whether defendants' justifications for the compensation differential were pretextual, defendants' motion for summary judgment as to plaintiff's EPA claim will be denied.

Defendants first argue that Sheehan was entitled to greater compensation than plaintiff because he had more Branch Manager experience, he headed a larger branch, and he was a more senior Q & R employee. Sheehan began his career with Q & R in 1980, when he founded the Wolf Road Branch, and until the branch consolidation in 2001, held the position of Branch Manager. Defendants' submit that under Sheehan, the Wolf Road branch did "up to three times the volume of transactions as the downtown Albany branch" did under plaintiff's management. (DSMF ¶ 5). Additionally, defendants maintain that they were entitled to make a corporate business decision to retain Sheehan's higher salary when he was demoted to Operations Manager because they "were unwilling to penalize him by lowering his pay." *Id.* at 15.

■ While defendants are correct that various courts have held that experience,[6] seniority,[7] and salary-retention policies[8]

---

**6.** *See Shieldkret v. Park Place Entm't Corp.*, 01 Civ. 5471(HB), 2002 WL 91621, at *3 (S.D.N.Y. Jan. 23, 2002); *Hutchins v. Int'l Bhd. of Teamsters*, 177 F.3d 1076, 1081 (8th Cir.1999); *Irby v. Bittick*, 44 F.3d 949, 956 (11th Cir.1995).

**7.** *See, e.g.*, 29 U.S.C. § 206(d)(1) (1998); *see generally Ryduchowski*, 203 F.3d at 142.

**8.** *Taylor v. White*, 321 F.3d 710, 720 (8th Cir.2003) (holding that affirmative defenses relying on prior salary and/or salary-retention policies should be analyzed on a case-by-case basis, "with careful attention to alleged gender–based practices"); *but see Balmer v. HCA, Inc.*, 423 F.3d 606, 611–612 (6th Cir.2005) (holding that employers cannot rely solely on

can sometimes be legitimate, gender-neutral justifications sufficient to rebut a prima facie showing of discrimination in violation of the EPA, the plaintiff may combat these justifications by showing that they are simply a pretext for discrimination. *See, e.g., Aldrich,* 963 F.2d at 526. Here, the plaintiff has set forth evidence which creates a genuine issue of material fact as to whether defendants' affirmative defenses as to the wage disparity are a pretext for discrimination.

Plaintiff has produced evidence showing a long and successful career in the finance/securities industry, including tenure with defendants or their predecessors for almost 20 years. (Docket No. 19, Pl. Mem. Opp. Summ. J. at 4). While defendants maintain that post-merger, she was the "Registered Representative In Charge" of the downtown Albany branch (DSMF ¶ 7), she has set forth evidence that she served as the Branch Manager of that office from 1995–2000. (*See* Cox Aff. ¶¶ 23, 37; Pl.Ex. C; Pl.Ex. D). Further, plaintiff has provided evidence that although the downtown Albany office did do less transactional volume than the Wolf Road office, she actually had more managerial responsibility as a Branch Manager at the downtown Albany office than Sheehan did at Wolf Road. (Cox Aff. ¶¶ 55–57). This evidence raises questions as to whether and to what extent Sheehan was more experienced or more senior to plaintiff, and whether the wage disparity between plaintiff and Sheehan was truly justified by the alleged experience and seniority. These questions, as well as the question of the gender-neutrali-ty of the wage-retention affirmative defense offered by the defendants, will be best answered by a jury.

Read in the light most favorable to the plaintiff, as the non-moving party, the evidence supports an inference that the defendants' proffered justifications for the disparity in compensation between plaintiff and Sheehan are pretexts for gender discrimination. The defendants' have not proven their affirmative defenses such that no rational jury could find for plaintiff. Accordingly, defendants' motion for summary judgment as to plaintiff's EPA claim must be denied.

**D.** *Title VII and NYSHRL Discrimination Claims (First and Third Causes of Action )*

 Plaintiff claims that she received unequal pay for equal work on the basis of her sex in violation of both Title VII [9] and the NYSHRL.[10] NYSHRL discrimination claims "are evaluated using the same analytical framework used in Title VII actions." *Burniche v. General Elec. Automation Servs., Inc.,* 306 F.Supp.2d 233, 238–39 (N.D.N.Y.2004) (quoting *Farias v. Instructional Sys.,* 259 F.3d 91, 98 (2d Cir.2001)). Equal pay claims under the EPA, Title VII, and the NYSHRL are generally analyzed under the same standards; "however, claims pursuant to Title VII or the NY[S]HRL require a plaintiff to prove that the pay differential was motivated by a discriminatory animus." *Heap v. County of Schenectady,* 214 F.Supp.2d 263, 271 (N.D.N.Y.2002) (internal citations

---

prior salary in an attempt to justify a disparity in compensation).

9. *See* 42 U.S.C. § 2000e–2(a)(1) ("It shall be an unlawful employment practice for an employer to … discriminate against any individual with respect to his compensation, … because of such individual's … sex").

10. *See* N.Y. Exec. Law § 296(1)(a) ("It shall be an unlawful discriminatory practice [f]or an employer …, because of the … sex … of any individual, … to discriminate against such individual in compensation or in terms, conditions, or privileges of employment").

omitted); *Belfi v. Prendergast,* 191 F.3d 129, 139 (2d Cir.1999).

■■■ To establish an equal pay claim under Title VII or the NYSHRL, a plaintiff must first demonstrate a prima facie case of gender discrimination. *Burniche,* 306 F.Supp.2d at 239 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the plaintiff satisfies this burden, "a rebuttable presumption of discrimination arises and the burden of production shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' " for the difference in compensation. *Id.* (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). Should the defendant fulfill this obligation, the presumption of discrimination disappears, and the burden again shifts to the plaintiff to prove that the explanations offered by the defendant are merely pretexts for discrimination, *Id.* (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817); i.e., "not only was the reason offered false, but that the real reason was discrimination," *Belfi,* 191 F.3d at 140 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

■■■ To determine whether a plaintiff has demonstrated a discriminatory animus, a court will examine the entire record to determine "whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James v. New York Racing Ass'n,* 233 F.3d 149, 156 (2d Cir.2000); *see also Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir.2000). Allegations of pretext alone are not enough—there must be evidence that decisions made in regard to plaintiff's compensation were made because of plaintiff's sex. *See e.g., Belfi,* 191 F.3d at 140; *Burniche,* 306 F.Supp.2d at 243.

■■■ As discussed above, plaintiff has established a prima facie case of unequal pay based on gender discrimination and has created a triable issue of fact as to whether the affirmative defenses set forth by the defendants were pretextual. However, plaintiff has presented no compelling evidence which would create a genuine issue of material fact with respect to discriminatory intent. Plaintiff provided no evidence, other than the fact that Sheehan's compensation was higher than hers, to support her contention that she was paid less *because she was a woman.* In her deposition, plaintiff could not cite to any statements, documentary evidence, or other examples of this discriminatory practice occurring at Q & R in support of her contention of gender discrimination.[11]

---

11. In her Memorandum in Opposition to Summary Judgment, in support of her allegation that defendants possessed the requisite discriminatory intent to demonstrate a violation of Title VII and NYSHRL, plaintiff, *for the first time,* alleges that she was subjected to a hostile work environment. Plaintiff cannot amend her complaint to add an additional claim simply by raising new facts and allegations in her Opposition Papers. *See Kearney v. County of Rockland,* 373 F.Supp.2d 434, 441 (S.D.N.Y.2005); *Hillaire v. Delta Funding Corp.,* No. 98–7188, 2002 WL 31123860, at *3 (E.D.N.Y. Sept. 26, 2002); *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 170 F.R.D. 111, 119 (S.D.N.Y.1997) (finding that "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment"). Accordingly, because nothing in either the EEOC charge or complaint put defendants on notice of this new claim, plaintiff's hostile work environment claim will not be considered.

Moreover, even if the plaintiff's hostile work environment claim were to be considered, plaintiff does not allege sufficient facts to support that cause of action. A plaintiff claiming a hostile working environment must establish that the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

(DSMF, Defs.' Ex. 1, Cox Dep. at 157). Without evidence that defendants intentionally paid plaintiff less than Sheehan because she was a woman, no rational jury could find discriminatory intent.

Plaintiff has clearly failed to present enough evidence of discriminatory intent to survive summary judgment. Accordingly, defendants' motion for summary judgment as to plaintiff's claims of discrimination on the basis of sex in violation of Title VII and NYSHRL will be granted.

### E. *Retaliation Claim (Fourth Cause of Action )*

 Plaintiff's final. claim is that she was subjected to unlawful retaliation after filing her EEOC complaint, in violation of the NYSHRL, New York Executive Law § 296(7).[12] Under the Human Rights law, "it is unlawful to retaliate against an employee for opposing discriminatory practices." *Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 312, 786 N.Y.S.2d 382, 819 N.E.2d 998 (2004) (citing Exec. Law § 296(7)). To make out a prima facie case of retaliation under NYSHRL, a plaintiff must demonstrate that: "(1) she has engaged in protected activity; (2) her employer was aware that she participated in such activity; (3) she suffered an adverse employment action based upon her activity; and (4) there is a causal connection between the protected activity and the adverse action." *Id.* at 313, 786 N.Y.S.2d 382, 819 N.E.2d 998. The "burden of proof that must be met to permit a ... plaintiff to survive a summary judgment motion at the prima facie stage has been characterized as 'minimal' and 'de minimis.'" *Jute v. Hamilton Sundstrand Corp.,* No. 04–CV–3927, 420 F.3d 166, 173 (2d

---

employment and create an abusive working environment." *Harris v. Forklift Sys.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "To survive a motion for summary judgment [on a claim of sex-based hostile work environment], a plaintiff ... must [establish two elements:] (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Mack v. Otis Elevator Co.,* 326 F.3d 116, 122 (2d Cir.2003) (quoting *Richardson v. New York State Dep't of Corr. Service,* 180 F.3d 426, 436 (2d Cir.1999)) (internal quotation marks omitted). The first prong relates to the work environment itself and the effect on the plaintiff, while the second prong "relates to the employer's response to a complaint about the environment." *Howley v. Town of Stratford,* 217 F.3d 141, 153 (2d Cir.2000).

Even if the plaintiff could establish the first prong, plaintiff could not establish the second prong. *Plaintiff never complained to any superior about an alleged hostile work environment;* she did nothing to report Sciortino's alleged conduct to the defendants, so they were precluded from any sort of response,. let alone one to remedy the situation. Therefore, even if the plaintiff's hostile work environment claim was considered, because plaintiff does not allege sufficient facts in support of this claim, it would be dismissed.

**12.** Claims of retaliation under NYSHRL and Title VII are essentially identical, as the New York courts require the same standard of proof for claims brought under the NYSHRL as those brought under Title VII. *See Tomka v. Seiler,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995) (citing *Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985)); *see also Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 360 (2d Cir.1993) (plaintiff's claim under NYSHRL "is governed by the same standards as his federal claim").

Plaintiff acknowledges that she cannot also bring a Title VII claim for retaliation because the 180–day statutory limitations period on her action passed without her filing a federal action. (Docket No. 19 at 23). *See* 42 U.S.C. § 2000–e–5(1) (2003) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment ...."). As such, inquiry will be limited to the retaliation claim under NYSHRL.

Cir.2005) (quoting *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir.2005)).

■ Should the plaintiff establish a prima facie case of retaliation, a presumption of retaliation appears, and the employer must articulate a "legitimate, non-retaliatory reason for the adverse employment action." *Id.* (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998)). If an employer can offer proof, the presumption disappears, and "the employee must show that retaliation was a substantial reason for the adverse employment action." *Id.* (citing *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120–21 (2d Cir.1997)).

Defendants move for summary judgment on the grounds that plaintiff cannot demonstrate the adverse employment action necessary to establish a prima facie case of retaliation. It is undisputed that plaintiff has met the first two prongs of her initial burden of establishing a prima facie case of retaliation. Plaintiff (1) participated in a protected activity—she filed a complaint with the EEOC in April of 2002;[13] and (2) defendants were aware of the protected activity—Sciortino admits to receiving notice of plaintiff's EEOC complaint later that month. (DSMF ¶ 31; *see also* DSMF, Defs.' Ex. 3, Sciortino Dep. at 86). It is the third prong of the test—that plaintiff suffered an adverse employment action as a result of the filing of her EEOC complaint—that is the focus of this particular dispute.

■ An adverse employment action is a "'materially adverse change' in the terms and conditions of employment.'" *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir.2004) (quoting *Richardson v. New York State Dep't of Corr. Service*, 180 F.3d 426, 446 (2d Cir.1999)). It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000). Adverse employment action is defined broadly, and includes "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," as well as lesser actions, such as "negative evaluation letters ... [and] express accusations of lying." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir.2001). Further, the Supreme Court has recently held that constructive discharge qualifies as adverse employment action, for purposes of Title VII analysis.[14] *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).

■ Construed in the light most favorable to plaintiff, as the non-moving party, reasonable jurors could find that plaintiff suffered an adverse employment action. Immediately upon his receipt of the EEOC notice of complaint, Sciortino called plaintiff *at her home* to complain that plaintiff should have given him a "heads up" before filing the charge. Later, he allegedly told Sheehan that plaintiff had "shot herself in the foot" by filing the EEOC complaint, and that plaintiff should realize that her career with defendants was over. Additionally, plaintiff maintains that immediately after she filed the complaint, she was "shunned" by her co-workers, who "treat-

---

13. *See, e.g., Simpson v. New York State Dep't of Civil Service*, No. 02–CV–1216, 2005 WL 545349, at *20 (N.D.N.Y. Mar. 1, 2005) ("Plainly the filing of an EEOC complaint is a protected activity") (citing *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir.2001)); *see also*

*Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir.2001).

14. This holding also applies to analysis of NYSHRL claims, because as previously discussed, these claims are essentially identical.

ed [plaintiff] as an outcast." (Compl. ¶ 44). She states that soon after she filed the complaint, she felt a "coldness" from her co-workers that she had not felt before. (DSMF, Defs.' Ex. 1, Cox Dep. at 190).

 Furthermore, plaintiff argues in the alternative that while the above facts are sufficient to establish a genuine issue of material fact as to whether plaintiff suffered adverse employment action, reasonable factfinders could also find that she was constructively discharged by defendants, which would also constitute an adverse employment action. "[A]n employee is constructively discharged when [her] employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir.2003)). Plaintiffs must show either specific intent or "that the employer's actions were 'deliberate' and not merely 'negligen[t] or ineffective[ ].' " *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir.2000)). Additionally, plaintiffs must objectively demonstrate that the working conditions had. become intolerable, or "so difficult and unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Terry*, 336 F.3d at 152 (quoting *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir.1996)).

While plaintiff cannot provide specific intent on defendants' part to establish an intolerable work environment, she has provided sufficient evidence to raise questions of fact as to whether defendants deliberately created intolerable working conditions. Reasonable people could find that Sciortino's calling plaintiff at home to complain about her filing of an EEOC complaint, as well as his alleged comments to Sheehan concerning plaintiff's future with defendants was "deliberate." Further, it is possible that reasonable people may find that after filing the EEOC complaint, plaintiff's working conditions were intolerable. After hearing Sciortino's alleged statements, plaintiff may have felt that it was inevitable that she would be fired by defendants, and that working in constant apprehension was intolerable. She also had little support from her co-workers, as they began to shun her immediately after she filed the complaint. In a small office, this coldness could have made it next to impossible for plaintiff to do her job, let alone do it well. Therefore, as reasonable people could also find that plaintiff was constructively discharged, plaintiff has satisfied her burden on the third prong of the retaliation test.

 Plaintiff has also presented sufficient evidence to show the causal connection between her protected activity and the adverse employment action. There is not a "bright line" test to define the "temporal relationship ... [that would] establish a causal relationship." *Gorman–Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir.2001). Instead, "the causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Lovejoy–Wilson*, 263 F.3d at 224 (quoting *Cifra v. GE*, 252 F.3d 205, 216 (2d Cir.2001)).

Here, Sciortino called plaintiff the same day that he received notification from the EEOC that plaintiff had filed a complaint. Plaintiff has testified that her co-workers began shunning her and treating her coldly immediately after Sciortino received notice of the complaint. Finally, plaintiff was told of the statements Sciortino allegedly made to Sheehan, regarding plaintiff having "shot herself in the foot" by filing

the complaint, sometime in May, just one month after she filed the complaint. This time span is short enough to permit a jury to infer a causal connection.[15]

Plaintiff has thus met her "minimal" burden of establishing a prima facie case of retaliation by defendants. As defendants have not offered a "legitimate, non-retaliatory reason for the adverse employment action," *Jute*, 420 F.3d 166, 173 (citing *Quinn*, 159 F.3d at 768), the presumption of retaliation remains, and plaintiff's claim must survive summary judgment. Accordingly, defendants' motion as to plaintiff's retaliation claim must be denied.

## IV. CONCLUSION

While plaintiff has established that reasonable jurors could find that defendants violated the EPA by paying plaintiff less than they paid her male counterpart, she has failed to show that defendants had the discriminatory intent necessary to demonstrate a Title VII and/or NYSHRL violation of unequal compensation. However, plaintiff has set forth sufficient evidence to show that there are genuine issues of material fact such that reasonable people could find defendants engaged in unlawful retaliation after plaintiff filed her EEOC complaint, in violation of NYSHRL.

Therefore, it is

ORDERED that

1. Defendants' motions for summary judgment as to plaintiff's Equal Pay Act claim (*Second* cause of action) is DENIED;

2. Defendants' motion for summary judgment as to plaintiff's Title VII and New York State Human Rights Law claims (*First* and *Third* causes of action) of discrimination on the basis of sex are GRANTED; and those causes of action are DISMISSED; and

3. Defendants' motion for summary judgment as to plaintiff's New York State Human Rights Law retaliation claim (*Fourth* cause of action) is DENIED.

IT IS SO ORDERED.

---

**15.** *See Lovejoy–Wilson,* 263 F.3d at 224 (finding that an employee suspension within the same month the complaint was received by the employer demonstrated a causal connection); *Richardson v. New York State Dep't of Corr. Service,* 180 F.3d 426, 446–47 (2d Cir. 1999) (holding that abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998) (holding discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing a complaint with the state human rights office provided evidence of a causal connection between the protected activity and adverse employment action).